C. R. Galloway, etc., Complainant, Appellant, v. J. H. Hardison, Executor, et al., Defendants, Appellees.

(*Nashville,* December Term, 1932.)

Opinion filed May 20, 1933.

T. H. Peebles and J. C. Voorhies, for complainant, appellant.

Sam Holding, for complainants, appellees.

Special Justice W. B. Garvin delivered the opinion of the Court.

This suit was brought by Galloway, in his own right and as surviving partner of the firm of Galloway & Howell, against Jesse Howell, his deceased partner, his widow and children, and Columbia Bank & Trust Company, as Trustee under the will of Jesse Howell, seeking a construction of the will of Howell and a decee holding the proceeds of certain life insurance subject to indebtedness from Howell to the partnership, on the theory that Howell, by the provisions of his will, had (1) so diverted said proceeds from the statutory course of descent and distribution as to make said proceeds assets available to creditors generally, and (2) that, in any event, the debts of Howell to the partnership were "personal debts" directed by the will to be paid from said proceeds.

The will reads as follows, item one being the clause particularly relied on to support this view:

"I, Jesse Howell, Jr., do hereby make and publish this my last will and testament, hereby revoking any and all Wills by me heretofore made.

## *ITEM ONE.*

"I desire my Executor hereinafter named to pay all of my just debts out of the first money coming into his hands from my personal estate, exclusive of the proceeds from any insurance policies on my life, and should any of my personal debts, that is all debts except those arising from partnership transactions remain unpaid in whole or in part, after the exhaustion of my personal estate (exclusive of proceeds from life insurance), then my said Executor shall apply enough of the proceeds from my life insurance to finish the payment of my said personal and individual debts.

## *ITEM II.*

"I hereby give, devise and bequeath to my beloved wife, Maude Howell, for and during the term of her natural life or widowhood all of the real estate of which I die seized and possessed, and at her death or marriage said real estate shall vest in my children or the issue of any which may be dead at the time of my wife's death or marriage, share and share alike, the issue of any deceased child to take his or her share.

## *ITEM III.*

"I hereby appoint the Columbia Bank & Trust Company of Columbia, Tennessee, as Trustee, and I hereby give said Trustee all of my personal estate left after the payment of my debts, as provided for in Item I above and direct said Trustee to loan or invest said funds according to its judgment looking to the best interest of the beneficiaries and to pay the proceeds from any loans or from investments semi-annually to my said wife during her life or widowhood and at her death or marriage

to my children equally settling with each child as he or she becomes of age, and paying the share of any deceased child to his or her issue. The Trustee above named is hereby authorized and empowered to handle the trust funds without intervention or consent of any Court.

### ITEM IV.

"I hereby appoint J. H. Hardison as Executor of this my last Will and Testament and direct him, after settling my estate according to this Will, to pay over the remainder of my personal estate, including proceeds from Life Insurance, to the Trustee above named.

"Witness my hand this July 19, 1924.

"(Signed) Jesse Howell.

"We, the undersigned, have subscribed our names hereto at the request of the Testator as witnesses, this his last Will and Testament, which he signed and published as his last Will, in our presence, and we have signed in his presence and in the presence of each other.

"This July 19th, 1924.

"(Jurat) C. R. Galloway.

"(Jurat) W. H. Howell."

The Chancellor was of opinion that (1) the provision made in Item One for payment of a class of debts from the insurance fund in the contingency recited did not destroy the exemption in favor of the wife and children; and (2), also, that the individual indebtedness of Howell to the partnership was not within the class payable from the proceeds of this insurance, but was excluded therefrom, and denied recovery. The Court of Appeals first rendered an opinion reversing the Chancellor, holding that the testator had so diverted the proceeds of his insurance as to subject it to the payment of his debts,

without regard to classification. In response to a petition to rehear, however, that Court, following the opinion of this Court in *American Trust Co.* v. *Sperry,* 157 Tenn., 43, reconsidered that question, and held that the disposition of the insurance by the will did not subject the fund to claims of creditors generally, or to strictly partnership obligations; but the Court of Appeals was of opinion that the debts shown by the record to be withdrawals in the nature of loans, or advancements, by Howell from partnership funds were his "personal debts," within the meaning of the terms used by him in his will, and were not debts "arising from partnership transactions," expressly excluded from payment out of his insurance by the language of the will. So holding, and it appearing that these obligations would consume the entire fund, the decree was reversed, and, incidentally, payment of compensation out of this fund to the solicitor for his services in this litigation was denied. Petition for *certiorari* has been granted and argument heard.

We think it clear, as held by the Court of Appeals on the rehearing, that the first question is concluded by the opinion in *American Trust Co.* v. *Sperry, supra.* It must be conceded that the second question is in more doubt. But, recognizing the right of the testator to classify his indebtedness and limit application of this insurance fund, exempt by operation of law for the benefit of his wife and children, so as to leave them that protection which he evidently contemplated by creation of the trust for their benefit, can it be said that it was his intention to divert this fund to these obligations to his partnership, with the effect, which it is obvious from this record he might reasonably have foreseen, of leaving these dependents wholly without provision for their necessities? The in-

tent of the testator, expressed by the will as a whole, must be given effect. What was this intent?

 Looking to the pertinent language of item one of the will, hereinbefore quoted, it will be seen that the testator first directs the payment of his just debts from his "personal estate, exclusive of the proceeds from any insurance policies on my life." This exclusion required no expression from him, being provided for by statute, and his expression of it was an emphasis of the desire on his mind to preserve to his dependents this fund. He next authorizes encroachment on this insurance fund. "All of my just debts" had first been directed paid out of his general personal estate, but now he suggests a limiting classification to "my personal debts," and provides that, if any one of these remain unpaid, "*then* my said Executor shall apply *enough* of the proceeds from my life insurance to *finish* the payment of my said *personal and individual* debts." We italicize words apparently having significance, indicating clearly that only "enough" was to be taken from this fund to take care of this limited "personal and individual" class. Quite obviously he purposed including a limited class only in this special provision. In order that there might be no misunderstanding he expressly directs the payment from this fund of "debts *except* those arising from partnership transactions."

The learned Court of Appeals stresses, and supports with authority, that a partner's unauthorized withdrawals for his own use and account of partnership funds is beyond the scope of partnership authority and concludes that such transactions are not "partnership transactions," and therefore not without the express exception made by the testator. We are constrained to the

conclusion that this gives to the language, in its context and under the circumstances as a whole, too narrow or technical a meaning. "Arising from partnership transactions," in a commonly used and understood sense, would seem to cover all obligations growing out of such a business connection and association; whatever accounts were incident to the partnership relationship. The fund for his dependents was not to be subject to depletion or destruction contingent on the outcome of an accounting between the partners after he was gone. He must have realized and had in mind, in view of the volume of the partnership business, that this special fund, exempt by law, would otherwise be subject to too serious a contingency. And, particularly significant, in view of the rule that the will speaks as of the date of the death of the testator, is the obvious fact that he *then* well knew of his large indebtedness to the firm, and that if this insurance fund should be so applied, absolutely nothing would remain for his dependents, with the result that his creation of the trust for their benefit was an idle gesture. This fact *de hors* the instrument must be given full weight in arriving at the intention of the testator.

This view is consistent with the requirement of *clear* intention to divert, which limits this power under our cases which recognize the right to divert at all. Such an intention or purpose "must be explicitly declared." It "must be clearly expressed in apt words." See *American Trust Co.* v. *Sperry, supra,* at pages 51, 52, quoting from *Cooper* v. *Wright,* 110 Tenn., 214.

The decree of the Court of Appeals must be reversed, and the cause remanded to be proceeded with in accordance with the decree of the Chancellor.